Argued and submitted April 5, 2006, affirmed April 25, 2007

In the Matter of the Marriage of

Karen Michelle FRANCIS,
*Respondent,*

*and*

Paul Randall FRANCIS,
*Appellant.*

03-DS-0594-ST; A124810

157 P3d 1202

Helen T. Dziuba argued the cause and filed the briefs for appellant.

Kristin M. Larson argued the cause for respondent. With her on the brief was Stahancyk, Kent, Johnson & Hook, P.C.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

ORTEGA, J.

---

* Landau, J., *vice* Ceniceros, S. J.

**ORTEGA, J.**

Husband appeals from a judgment dissolving his marriage, assigning error to several aspects of the trial court's property division. We address only his challenge to the distribution of real property and reject the other assignments of error without discussion. On *de novo* review, giving deference to the implied credibility findings made by the trial court, we affirm. *See* ORS 19.415(3); *Lind and Lind*, 207 Or App 56, 58, 139 P3d 1032 (2006).

Husband and wife were married in June 2001. At that time, husband's net worth was approximately $1.5 million, and wife had a negative net worth of about $9,000. One of husband's premarital assets was a piece of real property on Todds Crest Drive (Todds Crest property) with equity of $55,627. The parties signed a premarital agreement establishing that each of them retained separate ownership of their property, including the Todds Crest property. Once the parties married, wife moved into the Todds Crest property with husband. About three months later, husband transferred legal title to the Todds Crest property to the parties as joint owners.

According to wife (although husband disputes this), title was transferred because wife's feelings of financial insecurity were causing marital difficulties and the transfer was "an effort to improve [the] situation." The premarital agreement recognized that property held in both names with right of survivorship would be considered joint, not separate, property. Eventually, the parties revoked the premarital agreement entirely. While the parties were living on the Todds Crest property, wife regularly deposited her entire paycheck into a joint account that the parties used to pay for joint living and household expenses, including the mortgage on the Todds Crest property.

Almost a year after the transfer of the Todds Crest property, the parties sold it and purchased a residence on Dayton Road (Dayton Road property), which they also held jointly. The majority of the $119,535 down payment came from the proceeds of the sale of the Todds Crest property

($84,286). The difference of $35,249 was contributed from husband's separate funds.

Both parties participated in selecting the Dayton Road property. Both were listed on the mortgage, and the costs associated with the property (mortgage payments, taxes, utilities, and improvements) were paid from the parties' joint account. While living there, wife continued to contribute her entire paycheck to that account and also contributed to maintenance of the property by doing housework, caring for the yard, and making improvements. After another year, the parties separated and decided to divorce. The marriage lasted for about two years.

At trial, wife contended that she was entitled to half of the equity in the Dayton Road property. Husband argued that either he should be awarded all of that equity or, alternatively, his cash contribution to the down payment for the Dayton Road property, along with his premarital equity in the Todds Crest property, should be deducted and awarded to him first before dividing the remaining equity. The trial court agreed with wife and concluded that she was entitled to share equally in the Dayton Road property. The court found that husband's action in deeding the Todds Crest property to the parties jointly indicated an intent to give wife an interest in that property, which then provided "the lion's share of the down payment on the Dayton Road property." The court further emphasized that both parties participated in the selection and purchase of that property, "[b]oth [we]re liable on the loan" and "payments were made from joint funds paid out of the joint[ ] checking account."

ORS 107.105(1)(f) provides that a judgment in a marital dissolution action may provide

"[f]or the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

In the case of "marital assets"—*i.e.*, property acquired during the marriage—a rebuttable presumption of equal contribution applies and, unless that presumption is overcome, the property generally will be distributed equally. *Kunze and Kunze*, 337 Or 122, 133-34, 92 P3d 100 (2004). When a party seeks to overcome that presumption, that party has the burden of proving by a preponderance of the evidence that the other spouse did not contribute equally to the acquisition of the disputed property. *Id.* at 134.

■■ If a party ultimately rebuts the presumption, then that party is entitled to receive the disputed property separate from the property division unless other considerations make it "just and proper in all the circumstances" to distribute the property otherwise. For example, if a party has commingled or integrated a separately acquired asset with the shared finances of the marital partnership, then it may be "just and proper" to include that asset in the property division. *Id.* at 137, 139, 142. In that situation, "the court's inquiry properly focuses upon whether a spouse demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, that spouse intended for that property to become the joint property of the marital estate." *Id.* at 142. "[T]he court must evaluate the extent to which a spouse has integrated a separately acquired asset into the joint finances of the marital partnership and also evaluate whether any inequity would result from the award of that asset to that spouse as separate property." *Id.*

In *Lind*, the family residence was titled in the husband's name and was purchased using his separately held assets. 207 Or App at 59. Even though the husband had overcome the presumption of equal contribution, *id.* at 67, this court concluded that it was "just and proper" to divide the home equally between the parties, *id.* at 68. We stated that the fact that the home was used as the family residence was "powerful evidence" in support of that determination. *Id.* Further, equal division was appropriate because the mortgage payments came from a marital asset, the marriage was not short-term, the wife contributed to the home's design and construction, and she maintained it and regarded it as family property. *Id.* Finally, the fact that the parties had never

signed a prenuptial agreement that would have established the home as the husband's separate property supported the inference that the husband understood the home to be part of the marital estate. *Id.*

■  Here, it is undisputed that the Dayton Road property, which was acquired during the marriage, is a marital asset to which the presumption of equal contribution applies. Husband contends that he has overcome that presumption because $55,627 of the down payment for that property came from his premarital equity in the Todds Crest property, $35,249 came from his separate funds, and wife was not a "homemaker" as provided by the statute.[1] Wife responds that she made substantial contributions to the acquisition of the Dayton Road property. Although she acknowledges that the majority of the down payment came from the proceeds of the sale of the Todds Crest property, that property was held jointly by both parties at the time of its sale. Further, she notes that she was listed on the deed for the Dayton Road property and was obligated on the mortgage, and that a joint bank account, to which she contributed, paid the property's expenses.

Even assuming, without deciding, that husband has overcome the presumption of equal contribution, the trial court did not err in its division of the Dayton Road property, because it was "just and proper" to divide that property equally between husband and wife. As was the case in *Lind*, the events surrounding the premarital agreement provide evidence that husband did not intend for his premarital equity in the Todds Crest property to remain his separate property. That agreement, signed two weeks before the marriage, establishes that husband *originally* intended that the Todds Crest property would remain his separate property— but his transfer of title to joint ownership soon afterwards, in an apparent effort to alleviate wife's financial insecurity,[2]

---

[1] As noted above, ORS 107.105(1)(f) instructs that a "court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets." Because we decide this case on other grounds, we express no opinion about husband's argument that wife should not be considered a "homemaker" under that statute.

[2] Although husband disputes wife's claim that the transfer was meant to alleviate her concerns, we defer to the trial court's implied credibility findings on that point. *See Lind*, 207 Or App at 58.

supports an inference that his intention had changed and that he intended to give wife an equal interest in the value of the Todds Crest property at the time of the transfer, as contemplated by the premarital agreement's treatment of joint property.

Even apart from the events surrounding the premarital agreement, other considerations make it "just and proper" to equally divide the equity in the Dayton Road property. First, the fact that both the Todds Crest property and the Dayton Road property were used as the family residence is "powerful evidence" in support of equal division. *See Lind*, 207 Or App at 68. Second, the fact that the Dayton Road property (as well as the Todds Crest property) were held jointly cuts against any suggestion that husband intended to retain separate ownership of the down payment for the Dayton Road property; indeed, the record contains no support for the latter proposition. Third, both parties participated in the selection of that property, and both were liable on the mortgage. Fourth, mortgage payments, as well as other household expenses, were paid from a joint account into which wife consistently deposited her entire paycheck. Finally, wife relied on her interest in the Dayton Road property. In her words, "[M]y entire monthly paycheck went to maintain the Dayton [Road] property [because] I believed I was going to retire with this man and that was part of our retirement."

■ This case is different from *Lind* in one important respect: the marriage here lasted only two years, unlike the long-term marriage in *Lind*. However, we do not focus solely on the length of the marriage when determining the "just and proper" property distribution. *Massee and Massee*, 328 Or 195, 210, 970 P2d 1203 (1999) ("It is not proper for the court to focus solely on either the duration of the marriage or the extent to which the parties commingle their financial affairs when dividing marital property."). Here, considering all of the circumstances, equal distribution is "just and proper."

Affirmed.