Argued and submitted December 2, 2010, dissolution judgment modified to increase husband's equalizing judgment by $96,000 to reflect an equal share in the parties' equity in the Hunter portion of the Cal Henry property; otherwise affirmed December 14, 2011

In the Matter of the Marriage of

Donald Welton LOOMIS,
*Petitioner-Appellant,*

*and*

Claudia Clara LOOMIS,
*Respondent-Respondent.*

Douglas County Circuit Court
08DO0095DS; A142038

268 P3d 700

Daniel W Seitz argued the cause for petitioner. With him on the briefs was Daniel W. Seitz, P.C.

Jeffrey Mornarich argued the cause for respondent. With him on the brief were Dole, Coalwell, Clark, Mountainspring & Mornarich, P.C., and Stephen Mountainspring.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Senior Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Husband appeals a dissolution judgment, challenging the trial court's division of marital property. Husband argues that the trial court erred when it failed to award him 50 percent of the marital property and, further, that the division of the marital property was not just and proper. The disputed marital property includes real property and annuities. On *de novo* review, ORS 19.415(2),[1] we modify the judgment.

The parties were married in 1983 and had been married for 24 years when they separated in November 2007. Both had been previously married, husband four times and wife once. Wife has two sons from her previous marriage, and husband has one son. At the time of trial in January 2009, husband was 72 years of age and wife was 68.

When the parties married, they were both employed full time, wife as a lighting specialist and husband in flooring sales and installation. Both parties contributed their incomes to the marriage. Over the course of the marriage, husband earned more than wife, but wife was the primary homemaker and was also solely responsible for managing the parties' finances. She also helped husband with the bookkeeping for his business.

Husband suffered a stroke in 2000 but was able to return to work. He is receiving long-term chemotherapy for liver cancer. He testified that his health has slowed him down a bit, and that between his health and the economy, he is "pretty much retired." Wife, who has had health problems of her own, including cancer, has been working part time since 1993. Neither party requested an award of spousal support. The only dispute at trial and on appeal concerns the division of the marital property.

## I.  BACKGROUND

A.  *Premarital assets*

At the time of the marriage, husband had few assets and liabilities. His estimated net worth was $7,000. Wife

---

[1] ORS 19.415, which governs our standard of review in this case, was amended in 2009. Or Laws 2009, ch 231, §§ 2-3. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, the amendments do not apply.

owned an interest in real property she had been awarded in a dissolution judgment from her first husband, Hunter. The property, known as the Cal Henry property, was part of a 103.5 acre parcel that wife and Hunter purchased in 1971. During their marriage, wife and Hunter sold approximately 32 acres to Shapiro by a land sale contract. The remaining 71.56 acres that wife and Hunter retained included a mobile home, a garage, a pole barn, and a pump house.

Wife and Hunter took out a mortgage to finance the purchase of the mobile home on the Cal Henry property. The terms of the judgment dissolving wife's marriage to Hunter required that the property be sold, and that wife receive 60 percent of the proceeds and Hunter receive 40 percent. Until the property was sold, wife could live there if she continued to make the mortgage payments, and she was also entitled to receive the Shapiro contract payments. Efforts to sell the property were unsuccessful, and the parties lived there during their entire marriage.

## B.  *The prenuptial agreement*

Before their marriage, the parties executed a prenuptial agreement that recited that "each of the parties desire to preserve his or her present estate for the respective children of each" and "each party desires to accept the provisions of this agreement in lieu of all rights each would otherwise acquire by reason of the contemplated marriage." The agreement further recited:

"(1)  Release of Marital Rights: All property now owned by either party shall be held in his or her separate name, free from any claim of the other, except for property held jointly as hereinafter provided. The provisions of this agreement shall act as a release and full satisfaction of all rights each party may acquire by reason of the marriage to previously held property of the other party. Each party waives and relinquishes all rights which, as the other's survivor, he or she would acquire under the law now or hereafter in effect in any jurisdiction. Neither party shall have the right to any assets in the estate of the other as may be provided to a surviving spouse by law.

"(2)  <u>Jointly-Owned Property</u>: In the event that [the parties] shall own property jointly with right of survivorship, the survivor shall retain such property upon the death of the other.

"(3)  <u>Dissolution of Marriage</u>: In the event the marriage of [the parties] occurs, but is subsequently subject to a proceeding for dissolution of marriage:

"(a)  Each of the parties shall recover the specific assets brought into the marriage by him or her, as listed in the applicable attached and incorporated Exhibits 'A' and 'B', as well as any property then separately owned.

"(b)  Each of the parties shall receive one-half (1/2) of all jointly-held property.

"(c)  All banking accounts shall be divided equally between the parties.

"(4)  * * *

"(5)  <u>Children of the Parties</u>: [The parties] each [have] children from a prior marriage and each acknowledges that this agreement is intended to protect the respective estates of the parties for the benefit of said children."

(Underscoring in original.) On Exhibit A to the prenuptial agreement, wife listed among her assets the 60 percent interest in the Cal Henry property and her interest in the Shapiro contract.

## C.  *Assets acquired during the marriage*

1.  *The Cal Henry property.*  During the marriage, the parties lived in the mobile home on the Cal Henry property and improved and added to the property. The parties raised cattle on the acreage. They built corrals and repaired and replaced fences. The parties enlarged the pond on the property and built a shop to store husband's floor coverings. Husband testified that he believed that the costs for the improvements came from joint funds. Wife, who managed the parties' finances, testified that only her funds were used.

In 1987, the parties decided to purchase Hunter's 40 percent interest in the Cal Henry property for $11,460. The purchase required monthly payments of $100, followed by a balloon payment of the balance when the Shapiro contract

was paid off. Husband contributed monthly payments of $100, for a total of approximately $2,100, but the balloon payment came exclusively from wife's separate funds. As additional consideration for the parties' purchase of Hunter's interest, Hunter also received a portion of the Shapiro contract payments. In January 1990, when Shapiro made his final payment, wife used those funds to pay the balance owed to Hunter. Hunter deeded his interest in the Cal Henry property to both husband and wife.

During the marriage, wife received gifts of money from her mother. Initially, wife deposited those funds into the parties' joint account, but shortly thereafter she used those funds to pay off the loan on the Cal Henry property.

2. *Annuities.* In addition to the gifts mentioned above wife received a gift of $25,000 from her mother that wife initially kept separate, until husband learned of this gift and became upset. To placate him, wife transferred the funds to a joint account, but shortly thereafter she placed the funds in a separate investment account. The account, now known as the Lafayette annuity, has appreciated in value. When wife's mother died in 1990, wife inherited $62,016. Wife kept $30,000 of the funds in a separate account in her name only and placed the rest of the funds in a joint account. That separate account, now known as the Transamerica annuity, has grown significantly. The parties did not make further contributions to or withdrawals from either the Lafayette or Transamerica annuity account.

3. *The Loomis Loving Trust.* In 1995, after more than 20 years of marriage, the parties created the "Loomis Loving Trust," a revocable living trust. Wife testified that she wanted to create the trust because there were difficulties in the marriage and she wanted to protect her separate assets—specifically the Cal Henry property and the annuity accounts—for her sons. Husband testified that he believed that the trust was a means to avoid probate and to provide for the parties' joint financial future.

The trust provided, in Article I, Section 3:

*"Any separate property, including any individual interests in property, and the proceeds from such property, which is or*

*becomes trust property, shall remain the separate property of a Trustmaker.* A separate schedule of such property shall be maintained to facilitate the payment of income or transfer of all or part of the principal [to] the Trustmaker who is entitled to such distributions. Either of us shall have the unrestricted right to remove all or part of our respective separate property at any time. However, *to simplify trust administration, each of us agree that unless an asset is specifically identified as being the separate property of only one of us on such a schedule, that regardless of which of us contributed an asset to the trust, and regardless of the form of the prior tenancy of the asset contributed, that each of us is the owner of an undivided one-half (1/2) interest as a tenant in common in each of the assets contributed to the trust during our joint lifetimes.* Any joint tenancy rights or interests which may have existed at any time are hereby extinguished and are deemed to be properties held as equal tenants in common with no rights of survivorship."

(Emphasis added.) Upon the death of both parties, the trust provided that 90 percent of the estate would be distributed to wife's sons and the remaining 10 percent would be distributed to husband's son. The trust explicitly gave wife's sons the option of receiving the Cal Henry property as part of their shares of the trust. In the event of divorce, the trust provided:

"It is our intent that our respective property held in trust shall not be used for the benefit of the other spouse upon the dissolution of our marriage."

Among other assets conveyed to the trust, the parties conveyed the Cal Henry property and the two annuities to "Donald W. Loomis and Claudia C. Loomis, Trustees." The "Loving Trust Funding Checklist" listed the Cal Henry property and the Transamerica account as joint assets and the Lafayette account as wife's separate asset.

In June 2002, wife became concerned that the trust did not adequately protect the Cal Henry property for her sons, and she informed husband that she wanted to amend it. The trust was amended to provide that, upon the disability or death of either party, the trust provisions relating to the Cal Henry property would become irrevocable and the trustee would set aside and hold the Cal Henry property in trust. The

expenses of the Cal Henry property, including taxes, insurance, utilities and maintenance, were to be paid from other trust assets.

In November 2007, before husband filed for dissolution, wife transferred the Lafayette annuity from the trust to an account in her name. The Transamerica account, which had been listed in the trust as a joint asset, remained in the trust.

4. *Other assets.* The parties have a number of retirement accounts, certificates of deposit, checking, savings and money market accounts that the trial court distributed and that are not in dispute on appeal. Husband had business assets, including inventory and accounts receivables, also not at issue on appeal.

D. Trial court's division of assets

At trial, husband asked that the trust be viewed as having created joint interests in the properties conveyed to it, and that husband receive an equal share of all the assets, including the Cal Henry property and the annuities. The trial court concluded that the prenuptial agreement "provides direction for all the marital property events of the marriage." The court essentially gave no effect to the trust and rejected husband's argument that the conveyance of the Cal Henry property and the annuities to the trust required that those properties be treated as joint assets. The court further found that wife had rebutted any presumption of equal contribution with respect to the acquisition of Hunter's 40 percent interest in the Cal Henry property, the appreciation in the Cal Henry property, and the acquisition and appreciation of the annuities. The court thus awarded wife the entire Cal Henry property and the annuities, free and clear of any interest by husband.

On appeal, husband contends that the trial court should have awarded him a half interest in all of the Cal Henry property, as well as half of the value of the two annuities. In husband's view, the parties, through their conduct, rescinded the prenuptial agreement. Husband contends that, despite having begun as a separate asset, wife's 60 percent

interest in the Cal Henry property was commingled through its use as a marital residence, through husband's contributions toward payment of the mortgage, and by virtue of improvements to and uses made of the property by the parties during the marriage. As for improvements, husband notes that during the marriage, the parties improved the ponds and fencing and added a shop that served as husband's office and from which he ran his business. Additionally, for several years, the parties kept a small cattle operation on the property that was primarily managed by husband. All of those circumstances, husband contends, effectively rescinded the prenuptial agreement and caused wife's 60 percent interest in the Cal Henry property to become integrated into the marital estate so as to require that it be treated as marital property and divided equally in a just and proper division of assets. *Kunze and Kunze*, 337 Or 122, 133, 92 P3d 100 (2004). Husband asserts, further, that the remaining 40 percent interest in the Cal Henry property that he and wife acquired in the property during the marriage, as well as the appreciation on the entire Cal Henry property, are marital assets. *Olinger and Olinger*, 75 Or App 351, 354, 707 P2d 64, *rev den*, 300 Or 367 (1985). In any event, husband contends that when the Cal Henry property was conveyed to the trust, the entire property became a joint asset because it was not listed as a separate asset of wife, as was the Lafayette account. The same rationale applies, he contends, with respect to the annuities, which were acquired during the marriage and have appreciated. Finally, irrespective of whether the property or annuities or any part of them are marital assets, husband contends that it is just and proper that he be awarded a half interest.

In wife's view, the prenuptial agreement requires that wife's 60 percent interest in the Cal Henry property be held out of the marital estate. She asserts, further, that she has rebutted any presumption of equal contribution with respect to the acquisition of Hunter's 40 percent interest in the Cal Henry property, as well as to the appreciation in the Cal Henry property, because any improvements made to the property were made with her own funds, and, finally, that conveying the property to the trust did not alter—and in fact

reinforced—the separate nature of the ownership. She makes the same contentions with respect to the two disputed annuities.

## II. ANALYSIS

ORS 107.105(1)(f) provides that a judgment in a marital dissolution action may provide

"[f]or the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances."

As we explained in *Cook and Cook*, 240 Or App 1, 248 P3d 420 (2010), under ORS 107.105(1)(f), property subject to division in a dissolution consists of two classes. The first category consists of "the real or personal property, or both, of either or both of the parties," ORS 107.105(1)(f), consisting of any property that the parties possess at the time of the dissolution, regardless of when the property was first acquired. *Pierson and Pierson*, 294 Or 117, 121-22, 653 P2d 1258 (1982). That property is referred to as "marital property." *Massee and Massee*, 328 Or 195, 201 n 2, 970 P2d 1203 (1999). The distribution of marital property is governed by a statutory standard of what is "just and proper in all the circumstances." ORS 107.105(1)(f); *see also Kunze*, 337 Or at 134.

The second category, "marital assets," are a subset of marital property and refer to property acquired during the marriage. *Pierson*, 294 Or at 121. There is a rebuttable presumption that property acquired during the marriage was acquired as a result of the equal contribution of the parties. A party seeking to overcome the presumption of equal contribution has the burden of proving by a preponderance of the evidence that the other spouse did not contribute equally to the acquisition of the disputed property. *Id.* at 134.

If the presumption of equal contribution is rebutted, or if the property is not a marital asset because it was separately acquired, then the party holding the separate asset is entitled to receive the property in the division of marital assets, *Kunze*, 337 Or at 133-34, unless other considerations make it "just and proper in all the circumstances" to distribute the property otherwise. It may be just and proper to

divide a separately acquired asset between both spouses when a spouse has so integrated the separately acquired asset into the joint finances of the marital partnership that it would be inequitable to award the asset to that spouse as separate property. To determine whether a spouse has so integrated a separately acquired asset, courts focus on whether the spouse demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, that spouse intended for that property to become joint property of the marital estate. "[T]he court must evaluate the extent to which a spouse has integrated a separately acquired asset into the joint finances of the marital partnership and also evaluate whether any inequity would result from the award of that asset to that spouse as separate property." *Id.* at 142. In this case, the prenuptial agreement and the trust are additional considerations in determining how the property of the parties should be divided. We address the relevant considerations with respect to each disputed asset.

A.   *The Cal Henry property—wife's prenuptial portion*

At the time of the marriage, wife's equity in her 60 percent share of the Cal Henry property was approximately $72,000; at the time of dissolution, the parties agree that the equity in the entire property—including the Hunter portion acquired during the marriage—was $480,000. Because it was acquired by wife before the marriage, wife's premarital equity in her 60 percent interest in the Cal Henry property is not a marital asset. *Kunze,* 337 Or at 134. Additionally, the parties' prenuptial agreement provides that, upon dissolution, the parties are entitled to the "specific assets brought into the marriage." Wife asserts for that reason that her original equity in the Cal Henry property is simply not subject to division, either as a marital asset or as marital property.

Prenuptial agreements are generally enforceable. ORS 108.140 (1981).[2] *Moore v. Schermerhorn,* 210 Or 23, 307

---

[2] We note that because the parties' prenuptial agreement was executed in 1983, the Uniform Prenuptial Agreement Act, ORS 108.700 to 108.740, which took effect on January 1, 1988, does not apply. *Purcell and Purcell,* 99 Or App 668, 783 P3d 1038 (1989). At the relevant time, ORS 108.140 (1981) provided, in part:

"A man and a woman who are parties to an intended marriage may enter into a prenuptial agreement in writing concerning their respective personal property holdings, and the final disposition thereof, upon such terms and conditions

P2d 483 (1957). If the parties' prenuptial agreement applies to wife's premarital equity in the Cal Henry property, then that property is not subject to division in the dissolution. *See Proctor and Proctor*, 234 Or App 722, 731-32, 229 P3d 635, *on recons*, 235 Or App 641, 234 P3d 133, *rev den*, 349 Or 56 (2010) (prenuptial agreement, enforced according to its terms, precludes division of encompassed assets).

Husband concedes that the prenuptial agreement, as written, is an enforceable agreement, but he contends that the parties' conduct throughout their long marriage and wife's conveyance of her 60 percent interest to the trust, as a joint asset, served to rescind the prenuptial agreement. *See, e.g., Francis and Francis*, 212 Or App 310, 157 P3d 1202 (2007) (husband's conveyance of separately acquired property shortly after marriage supports inference of intention to revoke prenuptial agreement); *Baxter and Baxter*, 139 Or App 32, 38, 911 P2d 343, *rev den*, 323 Or 483 (1996) ("[T]he parties' conduct demonstrated mutual intent to rescind the antenuptial agreement * * *.").

We conclude that there is no evidence that the prenuptial agreement was rescinded. First, there is no express indication by the parties of an intention to rescind the prenuptial agreement. The trust made no mention of the prenuptial agreement and, as explained further herein, was not inconsistent with it. In fact, at trial, wife testified that it was her intention in establishing the trust to protect the Cal Henry property for her heirs, a reinforcement of the goals set forth in the prenuptial agreement. The trust itself is consistent with those goals, providing that, in the event of dissolution, "it is our intent that our respective property held in trust shall not be used for the benefit of the other spouse." We conclude that the act of conveying the property to the trust did not implicitly revoke the prenuptial agreement.

Husband contends that an intention to rescind the prenuptial agreement is evidenced by the parties' treatment of the property during the marriage. However, wife was living on the Cal Henry property when the parties met and at

---

as may be mutually determined. If such intended marriage is consummated, such prenuptial agreement shall be binding upon the parties thereto, their heirs, legal representatives and assigns."

the time they were married. She planned to continue to live on the property as long as she could. The parties lived on the property six months before they were married. Thus, the parties' use of the property as their marital residence appears to have been contemplated at the time of the execution of the prenuptial agreement, which was less than six months before their marriage. We conclude for that additional reason that the use of the property as the marital residence did not implicitly revoke the prenuptial agreement.

In the alternative, husband contends that the Cal Henry property is, in fact, subject to division under the terms of the prenuptial agreement, because it was a jointly held asset at the time of dissolution, as a result of wife having conveyed her interest in the property to herself and husband, as trustees of the Loomis Loving Trust.

It is true, as husband contends, that, in establishing the trust, wife conveyed the entire Cal Henry property, including wife's premarital portion, to husband and wife as trustees of the trust. However, the trust instrument provided that "[a]ny separate property, including any individual interests in property, and the proceeds from such property, which becomes trust property, shall remain the separate property of the Trustmaker." The trust further provided that each party "shall have the unrestricted right to remove all or part of our respective property at any time." Thus, the conveyance of the property to the trust in and of itself did not create a joint property.

Husband notes that the trust further provided for the maintenance of a schedule of the properties "to facilitate the payment of income or transfer of all or part of the principal." The trust stated:

> "To simplify trust administration, each of us agree that unless an asset is specifically identified as being the separate property of only one of us on such a schedule, that regardless of which of us contributed an asset to the trust, and regardless of the form of the prior tenancy of the asset contributed, that each of us is the owner of an undivided one-half (1/2) interest as a tenant in common in each of the assets contributed to the trust during our joint lifetimes."

The Cal Henry property was listed on the trust schedule as a joint asset, and wife's premarital share was not segregated. As husband notes, the prenuptial agreement provided that, in the event of dissolution of marriage, each of the parties "shall receive one-half (1/2) of all jointly held property." In husband's view, read together, the trust instrument and prenuptial agreement require that all assets conveyed to the trust that were not identified as separate assets became jointly held, subject to equal division at the time of dissolution under the terms of the prenuptial agreement. We reject that interpretation. In the first place, in placing the property in trust, wife did not convey her 60 percent interest in the Cal Henry property to husband. Rather, wife conveyed her interest to herself and husband *as trustees*. As noted, the trust itself provided that any separate property conveyed to the trust was to remain the separate property of the trustmaker. Wife's conveyance of her 60 percent interest in the Cal Henry property to herself and husband as trustees was not a conveyance of an interest *to husband*. Further, the fact that the trust instrument provided that, *for purposes of trust administration,* properties not specifically identified as separate assets were to be regarded as joint assets did not effect a joint ownership of wife's 60 percent interest for all purposes. Our conclusion is bolstered by the provision of the trust instrument stating that "our respective property held in trust shall not be used for the benefits of the other spouse upon the dissolution of our marriage." Thus, we conclude that the Cal Henry property was not held jointly for purposes of the prenuptial agreement.

Further, the prenuptial agreement identified and described dispositions for three categories of properties upon dissolution: (1) assets brought into the marriage or separately owned at the time of dissolution, which are to be "recovered" by each party separately; (2) assets jointly held, which are to be divided equally; and (3) bank accounts, which are to be divided equally. The fact that the agreement provides for a spouse's "recovery" of assets brought into the marriage suggests that upon dissolution, even assets that have undergone interspousal conveyance are to be awarded to the party who brought the asset into the marriage. Husband's interpretation of the prenuptial agreement to require an

equal division of assets that were brought into the marriage but that were held jointly at the time of dissolution would defeat the stated purpose of the prenuptial agreement—to preserve the parties' "present estate for the respective children of each." In light of that stated purpose, we conclude that the only plausible reading of the prenuptial agreement is that the first category applies to assets brought into the marriage and that the second and third categories describe assets that are exclusive of the first, *i.e.*, assets acquired during the marriage. That is, the provisions requiring equal division of jointly held assets and bank accounts apply to assets that were acquired during the marriage and that do not fall within the first category. As we interpret the prenuptial agreement, the parties intended that upon dissolution, the parties would each recover the specific assets each brought into the marriage, whether or not those assets were held jointly at the time of dissolution. Thus, even if wife's conveyance of the property to the trust had conveyed an interest to husband, we would conclude that wife's premarital equity in the Cal Henry property is not subject to division as a joint asset under the prenuptial agreement because it was an asset brought into the marriage.

Husband contends, however, that the appreciation in the value of separate property brought into the marriage is nonetheless a marital asset subject to the presumption of equal division, *see Massee*, 328 Or at 207 (appreciation of separately acquired property during the marriage is a marital asset to which the rebuttable presumption of equal contribution applies), and that wife has not overcome the presumption of equal contribution with respect to that appreciation. He notes that the Cal Henry mortgage was paid off during the marriage, that improvements were made during the marriage, and that, although wife could trace the financial contributions to her own funds, the income that husband contributed in support of the household helped wife to use her funds to pay off the mortgage and to improve the property. Thus, he contends, he is entitled to an equal share of the marital appreciation.

Once again, we must consider the effect of the prenuptial agreement. *See Yager and Yager*, 155 Or App 407, 414, 963 P2d 137 (1998), *rev den*, 328 Or 365 (whether

prenuptial agreement applies only to property owned before the marriage or to increase in value as well depends on terms of agreement). Addressing only that portion of the appreciation attributable to wife's premarital 60 percent share of the Cal Henry property, we conclude that, although it is a marital asset, that appreciation is encompassed within the prenuptial agreement and is not subject to division. We held in *Proctor*, 234 Or App at 732, that, under the terms of the prenuptial agreement involved in that case, marital appreciation associated with separately held property, although a marital asset, was not subject to division. The dispositive provision of the prenuptial agreement in *Proctor* required that "any community efforts of either party contributed to or directed toward separate property assets of either spouse shall not create community interest in the separate assets." 234 Or App at 725. We stated that that provision indicated an intention that, upon dissolution, the appreciation associated with each separately held asset would be awarded to the spouse who separately held the asset. *Id.* at 732.

Here, the parties' prenuptial agreement did not expressly address the disposition of appreciation in separately held property. It provided, however, that each of the parties "desire to accept the provisions of this agreement in lieu of all rights each would otherwise acquire by reason of the marriage," and that "the provisions of this agreement shall act as a release and full satisfaction of all rights each party may acquire by reason of the marriage to previously held property of the other party." An interest that a spouse acquires in marital appreciation of separately held property is "by reason of the marriage." We conclude, therefore, that the language of the prenuptial agreement releases any interest that husband acquired, by virtue of the marriage, in the appreciation of wife's separately held 60 percent interest in the Cal Henry property. Therefore, the appreciation, like wife's premarital equity in the Cal Henry property, is not subject to division of the marital property.

B.  *The Cal Henry property—portion acquired during marriage*

As described, during the marriage, the parties acquired Hunter's 40 percent interest in the Cal Henry property. That share is a marital asset, because it was acquired

during the marriage. Wife asserts that she has overcome the presumption of equal contribution as to that property, because she has been able to trace the parties' 1987 purchase to her own funds. Although the record shows that wife made the primary financial contribution to the Hunter property acquisition, husband also contributed, and there is no indication that the parties intended for the property to be held separately. As noted, Hunter deeded the property to both parties, and the acquisition took place during a time when husband was participating fully in the marital partnership through the contribution of his income and labors. The parties used the property for their joint marital endeavors. We conclude that the presumption of equal contribution has not been overcome with respect to the Hunter portion of the property acquired during the marriage and its appreciation. Under the terms of the parties' prenuptial agreement, as a jointly held asset, the Hunter portion of the Cal Henry property must be divided equally between the parties.

Wife contends, however, that the terms of the trust, which specifically directed disposition of the entire Cal Henry property to wife's children upon the death of both trustees, show that the parties intended that the Hunter portion of the property is owned by wife separately. Therefore, wife contends, the property is not subject to the provision of the prenuptial agreement that requires that jointly held property be divided equally upon dissolution. We disagree. As we have held with respect to wife's 60 percent interest in the Cal Henry property, upon dissolution, the prenuptial agreement controls the disposition of property described therein. The prenuptial agreement provides that jointly held property acquired during the marriage is to be divided equally. We conclude that it is appropriate for husband to share in the value of the Hunter portion of the Cal Henry property acquired during the marriage, which was held jointly by the parties before the property was conveyed to the trust and was not listed as wife's separate property when it was conveyed to the trust. As previously noted, the parties agreed that the equity in the entire Cal Henry property was $480,000. The Hunter portion, including appreciation, is approximately 40 percent of the total equity in the property, or $192,000. Husband's share of that amount is $96,000.

## C. *Annuity accounts*

Both of the disputed annuities, the Lafayette annuity and the Transamerica annuity, originated with funds that wife received from her mother by gift or inheritance, and both have grown through passive appreciation. Both annuities were purchased after the parties were married. After the initial acquisition, the funds were held briefly in joint accounts before wife placed them in accounts in her own name. The parties neither added to nor drew from them. Wife transferred the account that preceded the Transamerica annuity to the trust in 1995 and, as noted, the trust described that account as a joint asset. Wife transferred the Lafayette annuity to the trust in 2002, and the trust listed it as wife's separate asset. In 2007, wife withdrew the Lafayette annuity from the trust.

We agree with the trial court that wife has overcome the presumption of husband's equal contribution to the gifts and inheritance that wife received from her mother and that were invested in the annuities. *Olson and Olson,* 218 Or App 1, 9, 178 P3d 272 (2008) ("In order to show that a spouse contributed to an acquisition of inherited property, the contribution must have influenced the inheritance."). We also conclude that wife has overcome the presumption of equal contribution with respect to the appreciation of those annuities, which occurred without any action on the part of either party. *Kunze,* 337 Or at 143. For the reasons explained with respect to wife's 60 percent interest in the Cal Henry property, we conclude that the transfer of the two annuities into the trust did not create joint ownership for purposes of the prenuptial agreement.

The prenuptial agreement provides that "[e]ach of the parties shall recover the specific assets brought into the marriage by him or her, * * * *as well as any property then separately owned.*" (Emphasis added.) Property "then separately owned" refers to property separately owned at the time of dissolution. Thus, we conclude that the annuities are wife's separate assets. Accordingly, under the prenuptial agreement, the two annuities were properly awarded to wife.

Finally, we must consider whether a just and proper division of assets requires that husband receive any further

interest in the marital property subject to division. Husband contends that, in light of his health, the length of the marriage, his financial contributions, and the sharing of the marital home and responsibilities, it is just and proper that he be awarded a greater share of the property. As previously noted, the record shows that the parties indeed lived as partners, sharing their incomes, resources, and enterprises, caring for each other, and supporting each other's businesses. Husband contributed his income, as well as a substantial gift from his mother, to the marital partnership. The extent to which wife was able to satisfy the mortgage on the Cal Henry property from her own resources was at least partially attributable to the fact that the parties relied on husband's income to support the family.

However, as we have concluded, the prenuptial agreement dictates much of the distribution in this case. Further, as noted, under *Kunze,* the proper focus in determining whether a separately held asset should be divided as a result of commingling is on whether a spouse's treatment of the asset demonstrated an intention to treat the asset as separate property, or whether, instead, the spouse intended for that property to become the joint property of the marital estate. 337 Or at 142; *see also Lind and Lind,* 207 Or App 56, 139 P3d 1032 (2006). Nothing in wife's conduct during the marriage indicated an intention to change the provision of the prenuptial agreement that assets brought into the marriage or owned separately at the time of dissolution were to be awarded to the spouse who brought the asset into the marriage. If anything, wife's actions consistently demonstrated an intention to reinforce that plan. Wife kept title to the original 60 percent interest and placed it in trust only because she thought that the trust would secure the property for her heirs, not because she wanted to share the asset with husband. Wife had the trust amended to insure that the Cal Henry property passed to her children in the event that she predeceased husband. Wife used the considerable financial gifts from her mother, as well as a portion of the inheritance from her mother, to pay off the property. Although the annuities were briefly held in joint accounts, wife quickly transferred them to accounts in her name only and, at the time they were placed into the trust, both accounts were in wife's

name. The testimony at trial indicates that wife intended to keep the funds separate.

We have also evaluated whether any other equitable considerations require an additional award to husband, *Kunze*, 337 Or at 147, and we conclude that the equities are satisfied by the award to husband of an equal interest in that portion of the Cal Henry property that the parties acquired during the marriage.

In summary, the Hunter portion of the Cal Henry property, including its appreciation, is properly considered a marital asset, and wife has not overcome the presumption of equal contribution with respect to that portion of the property. For that reason, the dissolution judgment is modified to increase husband's equalizing judgment to reflect an equal share in the parties' equity in the Hunter portion of the property. In all other respects, we affirm the trial court's division of marital property.

Dissolution judgment modified to increase husband's equalizing judgment to $96,000 to reflect an equal share in the parties' equity in the Hunter portion of the Cal Henry property; otherwise affirmed.