Argued and submitted October 12, affirmed December 5, 2012

In the Matter of the Marriage of

Jill CHRISTENSEN,
*Petitioner-Respondent,*
*and*

Edward CHRISTENSEN,
*Respondent-Appellant.*

Clackamas County Circuit Court
DR09010492; A145281

292 P3d 568

James R. Vestigo argued the cause for appellant. With him on the briefs was Blair & Vestigo, PC.

Michael J. Fearl argued the cause for respondent. With him on the brief were Thomas A. Bittner and Schulte, Anderson, Downes, Aronson & Bittner, P.C.

Before Armstrong, Presiding Judge, and Brewer, Judge, and Duncan, Judge.

BREWER, J.

## BREWER, J.

Husband appeals from a judgment dissolving the parties' marriage. In multiple assignments of error, he challenges the property and debt division that the trial court made. We decline husband's request that we review *de novo* the facts that the trial court found, ORS 19.415(3), and we conclude that the court did not abuse its discretion in dividing the parties' property and liabilities as it did. Accordingly, we affirm.

The parties were married for 11 years; they have no joint children. Both parties are in good health. Husband is a civil engineer, and wife is a real estate broker and developer. At the time of trial, husband was 54 years old and wife was 40. Both parties had modest assets at the time of their marriage. Because they are supported by evidence in the record, the following facts that the trial court found are binding on appeal:

"[Beginning in 2002], [d]uring the real estate boom, the parties separately invested in various speculative projects. Wife's separate investments resulted in larger financial gains. Wife also received $85,000 during the marriage from her mother's estate.

"Husband also engaged in a series of real estate investments including * * * his current project, Aberdeen Landing. Husband made all decisions concerning these projects and kept them separate from Wife's finances as well as holding them in his separate name.

"Overall, Husband's separate investments were not successful causing Husband to file bankruptcy in February 2002. Husband disclosed all of his assets to the Bankruptcy Court and·clearly did not claim any interest in Wife's separate investments, the Pfaffle and Claremont projects. The trustee in Bankruptcy Court abandoned any interest based upon Husband's representations that he did not have any interest in these assets.

"After the bankruptcy, any profit Husband made on his separate investments was used to pay Husband's separate tax liabilities and to invest in Aberdeen Landing, a project in Husband's separate name located in Washington State, consisting of approximately 200 acres.

"At the time of the divorce, Husband's engineering business, Welkin, was down (due to the downturn in the economy) and Husband's income and cash flow was nominal. Husband testified that he is unable to borrow to continue to develop Aberdeen Landing and that he owes approximately $2 million in liens against the property that he has personally guaranteed. Husband recently borrowed $25,000, from his mother.

"Husband intends to subdivide and develop Aberdeen Landing into residential lots. There is timber on the property that may eventually be harvested and sold but the current market for timber is so low it is not a fiscally appropriate time to log the property. Husband has managed to hold onto this investment in spite of the fact that he is not servicing the mortgage and is not currently able to finish the development.

"Husband testified that he brought his talents as a developer and engineer to Wife's development projects, thereby increasing the profits. In reality, Husband did bring his talent for subdividing real estate to Wife's projects however, Wife compensated Husband by paying his company and, at times, in excess of the true value of his contributions. Wife could have hired another engineer and reaped at least as much as she did by using Husband. At times Husband was a liability to Wife.

"Husband's finances were frequently a source of conflict. Husband's poor credit and tax arrears contributed to Wife's insecurities about commingling their finances. Therefore, Wife meticulously kept separate bank accounts and business entities. For the last nine of 11 years the parties' finances were totally separate."

Among wife's separately owned assets was a residence that the parties jointly occupied until their separation, the Egan Way property. With respect to that property, the trial court found and concluded:

"Wife will be awarded this property free and clear of any interest of Husband, but subject to all liens and encumbrances thereon. The court finds this property to have a fair market value of $1.4 million and a net equity of $650,000. Wife was able to trace her contributions to the acquisition of the Egan home from assets that the court finds were either premarital or that wife can claim as her separate property due to successfully rebutting the

presumption of equal contribution. Wife's contributions exceed the equity in the home due to depreciation in the housing market."

With respect to other investment assets that wife had owned and sold to reinvest in the Egan Way property, or still owned—including two real estate tenancies in common (TICs)—the court found and concluded:

> "[Wife] rebutted the presumption of equal contribution by meticulously keeping these business enterprises separate from the marital estate. Further, any contributions by Husband were done in the context of a business relationship for which Husband was compensated at least as well as any engineer hired would have been compensated. There was no commingling of any part of this business investment and all contributions to the acquisition and maintenance of the businesses was done with traceable funds from Wife alone."

The court awarded husband's professional services firms to him free of any interest of wife. With respect to the Aberdeen property, the court found and concluded:

> "Husband is awarded all interest in this property, free and clear of any interest of Wife, but subject to all liens and encumbrances. Husband used his separate investments to acquire and his talents to finance this project. The court concludes that Husband rebutted the presumption of equal contribution and should be awarded this property without including in the marital estate. Although the current economy presents challenges to the development of this property, the court finds that Husband has a net equity of $700,000 based upon a gross value of $3.6 million and development costs of approximately $900,000 and the current debt owed by Husband of $2 million."

In the concluding portion of its analysis, the court stated:

> "Attached to this opinion letter is a spreadsheet reflecting the division of assets and liabilities determined by the court. Although there is a small disparity between the bottom line distribution, the court will not require an equalizing judgment."

The spreadsheet that the court attached purported to award wife assets, including the Egan Way property—whose equity

the court valued at $600,000—totaling $705,894. The court awarded the Aberdeen property to husband at an assigned net value of $700,000, together with other miscellaneous assets, for a total of $719,780. In its spreadsheet calculus, the court did not list or assign values to several assets and debts that the parties owned or owed, including the two TICs that wife owned. The court also did not list in the spreadsheet a vehicle and other assets that wife had acquired with the proceeds of a home equity line of credit (HELOC) in the amount of $197,000 that, in valuing wife's equity in the Egan Way property, the court had treated as an encumbrance.

On appeal, husband challenges various aspects of the property division that the trial court made; we reject most of those challenges without discussion, focusing only on several apparent anomalies in the structure of the trial court's decision that husband has questioned. First, husband observes that the trial court fixed wife's equity in the Egan Way property at $600,000 in the spreadsheet, whereas the court had set that equity in the amount of $650,000 in the body of its findings. According to husband, the latter figure is the more accurate. Second, husband challenges the trial court's implicit determination in the spreadsheet calculation that the net value of the Egan Way property should be reduced by the full amount of the post-separation HELOC advances. According to husband, that determination improperly reduced the net value of that property by approximately $180,000, representing post-separation indebtedness that wife incurred to purchase a new vehicle, clothing, and other items that she acquired for her sole benefit, and which the trial court failed to account for in the spreadsheet calculation. Finally, husband questions the trial court's exclusion from that calculation of wife's interest in the TICs and the personal indebtedness that husband had incurred during the marriage. According to husband, those omissions substantially distorted the property division with the consequence that it was not "just and proper in all the circumstances" as required by ORS 107.105(1)(f).

ORS 107.105(1)(f) distinguishes between property brought into the marriage and property acquired during the marriage. *Kunze and Kunze*, 337 Or 122, 133, 92 P3d 100 (2004). Property in the latter category—termed "marital

assets"—is subject to a rebuttable presumption of equal contribution under ORS 107.105(1)(f)(C). If one spouse rebuts the presumption of equal contribution, "absent other considerations, it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption." *Kunze*, 337 Or at 135. If the presumption has not been rebutted, the property ordinarily will be divided equally between the parties, again "absent other considerations."[1] *Id.* at 134.

As the previous paragraph indicates, other considerations may bear on what is just and proper with respect to division of both marital assets and other marital property. The timing of, and relative contributions to, the acquisition of property are two significant considerations in the "just and proper" determination, but they are not the only relevant factors. Rather, courts also must consider equitable factors, including "the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and *** the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling." *Kunze*, 337 Or at 136; *see also id.* at 135 ("[T]he court's final inquiry as to the 'just and proper' division concerns the equity of the property division in view of all the circumstances of the parties.").

As part of determining a just and proper division of the parties' property, "a court may divide the debts that the parties incurred during their marriage." *Shlitter and Shlitter*, 188 Or App 277, 283, 71 P3d 154 (2003) (citation omitted). Our cases recognize a distinction between marital debts and debts that benefited only one of the parties. In determining the nature of a debt, courts "focus not on the person in whose name the [debt was incurred], but on the use to which it was put." *Branscomb and Branscomb*, 201 Or App 188, 202, 117 P3d 1051, *rev den*, 339 Or 544 (2005). If the debt was incurred to pay family expenses, equal division

---

[1] Property acquired before the marriage is not subject to the presumption of equal contribution. The party who acquired premarital property generally is entitled to receive that property in the marital-property division, unless other considerations make it just and proper to distribute it differently. *Loomis and Loomis*, 247 Or App 127, 136, 268 P3d 700 (2011). No such property is at issue in this case.

of the debt is generally appropriate. If, on the other hand, the debt is properly attributed to only one of the parties, the debt should generally remain that party's responsibility. *Id.* at 203.

Ultimately, the determination of what is just and proper in all the circumstances is a matter of discretion for the trial court, and we will disturb the court's decision only if it misapplied the statutory and equitable considerations required by ORS 107.105(1)(f). *Kunze*, 337 Or at 136.

In particular, husband asserts that the property division in this case was not just and proper because (1) "the court entirely ignored" husband's direct monetary and nonmonetary contributions that "made possible [w]ife's acquisition of substantial assets in her name alone;" and (2) the court failed to adequately account for the social objective of ensuring husband's economic self-sufficiency. The difficulty with both of those arguments is that they discount the findings that the trial court made that husband was fully compensated for his efforts in regard to wife's projects, that the parties scrupulously avoided commingling their assets at least, in part, in order to avoid subjecting wife's separate assets to husband's separate debts, and that husband's Aberdeen property was worth substantially more than he claimed.

Admittedly, it is difficult to follow the trial court's reasoning in that part of its letter opinion pertaining to the property division spreadsheet. In that concluding portion of its analysis, the court intimated that it might have undertaken to more or less equally divide the parties' assets, even though several significant assets were not included in the spreadsheet calculation. For example, as noted, the court did not include wife's interests in the two TICs that she had purchased during the marriage with the proceeds of sale of her separately owned assets. In her proposed property division, wife had valued those investments at $247,500.[2] In addition, presumably owing to a ministerial error, the court used a lower value for wife's equity in the

_____

[2] Husband had valued them at a substantially higher amount but ultimately took the position that they should be equally divided because they were impossible to value.

Egan Way property than it had designated in the body of its findings. And, finally, the court deducted wife's post-separation HELOC advances from her equity in the Egan Way property, even though the court did not include in the spreadsheet calculation the value of the separate assets that wife purchased from the proceeds of those advances.

Were it not for the trial court's underlying findings of fact, the foregoing anomalies would pose significant concerns in assessing whether the property division ultimately was just and proper. That is, if in fact the court had attempted to equally divide all of the parties' assets and debts, the division that it made did not accomplish that objective. However, it is clear from the body of the court's findings and conclusions that it had a different objective in mind. As discussed, the court found and concluded that wife had rebutted the presumption of equal contribution with respect to her separately owned assets. Moreover, as pertinent to the "just and proper" analysis, the court found and concluded that, because the parties' assets had not been commingled, both parties were professionals with their own business enterprises, husband was fully compensated for any work that he had performed on wife's investment projects, and husband's poor economic choices had, if anything, dampened wife's investment efforts, each party should receive her and his separate assets free of any claim by the other. Consistently with the underlying findings and conclusions in its letter opinion, and notwithstanding the anomalies in the spreadsheet, the general judgment of dissolution that the trial court entered awarded each of the parties her and his own separately held assets and liabilities, free of any claim or obligation of the other party.

Because the trial court's findings of fact are supported by evidence in the record, we will not disturb them. In light of those findings, each party rebutted the presumption of equal contribution as to all the marital assets of any significance. With respect to the "just and proper" analysis, the question is whether, despite the inaccuracies in the trial court's spreadsheet, husband has demonstrated that a "just and proper" distribution of the assets requires giving him a greater share than the court awarded him. We answer that question in the negative.

At the time of dissolution, the parties were relatively young and in good health, there were no joint children of the marriage, and both parties were capable of self-support. Throughout the last nine years of their 11-year marriage, the parties conducted their lives in a meticulously scripted way so as to avoid commingling their economic affairs. In the absence of countervailing circumstances, the division of assets and liabilities that the court made was consistent with the expectations that would reasonably flow from such an arrangement. *Cf. Jacobs and Jacobs,* 179 Or App 146, 152-53, 39 P3d 251 (2002) (awarding separately owned property to wife where property was not commingled and husband was separately paid for his contributions to the property). It follows that, although unequal, that division was not inequitable.

Affirmed.