Argued and submitted November 3, 2011, attorney-fee award vacated and remanded; otherwise affirmed July 25, 2012

In the Matter of the Marriage of

Thomas Patrick FAY,
*Petitioner-Appellant,*
*and*

Jody Lynn FAY,
nka Jody Lynn Holmes,
*Respondent-Respondent.*

Josephine County Circuit Court
08DR1001; A146380

283 P3d 945

George W. Kelly argued the cause and filed the brief for appellant.

Rogelio C. Cassol, Jr., argued the cause for respondent. With him on the brief was Emilia J. Gardner.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

### HADLOCK, J.

Husband appeals a dissolution judgment, challenging the trial court's property division and decision to award wife a portion of her attorney fees. Husband contends that the court unjustly required him to pay certain debts without giving him a balancing award of other property. He also argues that the court improperly awarded attorney fees without giving him an adequate opportunity to object to the amount of fees that wife requested. We conclude that the trial court did not abuse its discretion in dividing the property as it did. *See Kunze and Kunze*, 337 Or 122, 136, 92 P3d 100 (2004) (property division is reviewed for abuse of discretion). However, we conclude that the court erred in awarding wife attorney fees before the time in which husband could object had elapsed. Accordingly, we vacate the attorney-fee award and remand for further proceedings.

Except as discussed below, the pertinent facts are undisputed. Husband and wife moved in together and combined their finances in July 2000, they married in August 2002, and the dissolution petition was filed in late 2008. At issue in the divorce was the division of property including personal property, three real properties, and husband's irrigation business, Fay and Company, as well as debts including $136,296 owed in back taxes and a home equity line of credit. To accomplish that division, the trial court first assigned each item either to husband or to wife. The court then totaled the value of the property and debts awarded to each party (with some exceptions, which we explain in more detail below), and ruled that husband was entitled to an equalizing payment of $10,567 from wife because the net value of property awarded to her exceeded the net value of the award to husband by twice that amount.[1]

---

[1] The court also ordered husband to pay wife spousal support and a portion of her attorney fees. Because husband had not paid temporary spousal support that the court had previously awarded wife, the court ordered him to pay the new support as a lump sum rather than in monthly payments. In the general judgment, the court deducted the amount of wife's equalizing payment from the total amount that husband owed her for spousal support and attorney fees, with the net result that husband ended up owing wife approximately $57,000.

As noted, the court did not assign value to certain marital property and debts when it calculated the property-equalization award. Most significantly, the court awarded husband's business to him, along with associated debts, at zero net value.[2] The court noted that husband's business operated in the black (when his personal expenses were not charged against business receipts), the business had gross receipts approximating $250,000 in 2009, only about half of which was expended on materials, and even husband acknowledged that the business had some net value, although he offered no evidence to support his opinion that it was worth only $18,500. Nonetheless, the court explained that, "for purposes of the property division," the business would be awarded to husband, at "a net value of zero." That decision was based on the court's finding that husband, who had handled the parties' finances, had "commingled his business finances, his personal finances, and his son Aaron's finances into one large interwoven knot of inseparable strands."[3] Given the "hopelessly muddled" state of husband's finances, the court could not calculate a net value of the business for purposes of the property division. Accordingly, the court explained in its letter opinion that "the business will be given a net value of zero and will not be further considered."

In conjunction with that ruling, the court also assigned business-associated debts to husband, again at zero value for purposes of the property division. That assignment is reflected in the judgment, which, along with awarding husband the business, also states that husband "shall assume and pay and hold [wife] harmless from any and all tax debts, credit card debts and loans related thereto."

---

[2] In addition to the property and debts that we describe in the body of this opinion, the court did not take into account personal property that the parties had acquired before they married. It also did not include in its calculation the premarital value of the parties' marital residence, which husband had purchased before the parties married. The court awarded the residence to husband and deducted its premarital value from its current value in calculating the total awards to each party for purposes of equalizing the property division. Neither party has challenged the court's treatment of the premarital property.

[3] Husband has an adult son, Aaron Fay, who worked for husband's business. In lieu of a more traditional compensation package, husband covered many of his son's personal living expenses in addition to paying him a weekly salary.

Two of the debts assigned to husband are at issue in this appeal. First is a debt for $136,296 in back taxes, which the court made husband's "separate obligation." Second is the outstanding balance on a home equity line of credit (HELOC), which the court also ordered husband to pay. At trial, husband described the HELOC as a second mortgage on the parties' marital residence, referred to as "the Sleepy Hollow property," and implied that it also encumbered another of the parties' real properties, an undeveloped lot referred to as "the Harbeck property." He testified that the parties owed a balance of $87,000 on the HELOC, but he offered no documentary evidence to support that assertion. He did not state what the HELOC had been used for, testifying only that he had never used it for his business. Wife testified that she thought the HELOC had been used "for our Sleepy Hollow [property] and the business."

The trial court appears to have been skeptical about husband's assertions regarding the balance owed on the HELOC. That skepticism is reflected in the court's letter opinion, which spells out the ramifications of awarding the Sleepy Hollow property to husband. In that letter, the court rejected husband's testimony that the property was subject to a total mortgage of $175,000, and stated, "[N]o documentation was offered into evidence [to support husband's testimony], and the court instead will rely on the documents in evidence." Accordingly, when calculating the amount of equity in the Sleepy Hollow property to attribute to husband for purposes of equalizing the property awards, the court subtracted from its value only the $88,067 balance on a first mortgage that was documented in a mortgage statement admitted into evidence. The court did not subtract any amount either for the HELOC that husband testified was secured by the Sleepy Hollow property or for any other debt.

In discussing the Harbeck property, the court similarly noted that husband had testified that the parties had negative equity in the property, and again expressed skepticism: "Husband testified that a mortgage on this property exceeds its value by $10,200; no documents are in evidence, however, although Wife agrees that Husband has a business-related line of credit." The court awarded the property to wife and ordered husband to pay the outstanding

balance on the HELOC. The court did not mention the HELOC again in the letter opinion, and its calculation of the equalization award did not include any amount of debt attributable to the HELOC.

Although the court stated in the letter opinion that it would rely only on documented evidence of the parties' mortgage debts, the judgment (which wife's attorney drafted) refers to the HELOC in the provision disposing of the Sleepy Hollow property. That portion of the judgment states that husband is awarded the property "subject to the mortgage obligations [on the first mortgage of] $88,067.00," as well as the HELOC "in the approximate amount of $90,000, which obligations [husband] shall assume and pay * * *."[4] Other than husband's testimony that the parties owed $87,000 on the HELOC, the record includes no evidence of the actual outstanding balance on that account. Consequently, we are uncertain how wife's attorney arrived at the $90,000 figure in drafting the judgment.

In sum, although the court purported to divide the marital assets equally and, consistently with that aim, concluded that husband was entitled to an equalizing payment of $10,567 from wife, husband is obligated to pay debts that *may* approximate $223,000 ($136,296 in taxes associated with husband's business plus the roughly $87,000 that husband claims is owed on the HELOC) that the court did not factor into the property equalization.[5]

On appeal, husband contends that the trial court erred in requiring him to pay the HELOC and tax debts. Without awarding him other property to offset those debts, husband argues, requiring him to pay them results in an unjust disparity in the property division.[6] Husband's

---

[4] The judgment does not reference a "HELOC" explicitly, but refers to a "mortgage/equity line of credit/second obligation" using the same partial Wells Fargo account number that wife used when referring to the HELOC in both her statement of assets and liabilities and in the judgment that her attorney drafted. Accordingly, we read that portion of the judgment to refer to the HELOC that is one subject of husband's appeal.

[5] We use the word "may" advisedly; the record supports the trial court's apparent reluctance to credit husband's testimony regarding the balance owed on the HELOC.

[6] Husband also argues that the court erred in awarding half of the equity in the parties' third real property to wife, even though wife asked that the property be awarded to husband. Courts have the responsibility to distribute property in

argument generally is premised on the idea that wife benefitted from the nonpayment of the debts and, therefore, should assume half of the responsibility for them.

In response, wife first contends that husband failed to preserve the asserted claims of error. On the merits, she argues that the trial court appropriately exercised its discretion in ordering husband to pay the HELOC, given husband's practice of mixing personal and business expenses and wife's testimony that the HELOC was used for business-related purposes. With respect to the tax debt, wife argues that the debt is associated with husband's business and that the court followed the general practice of allocating business debts to the party who receives the business.

We begin with preservation of error. We agree with wife, in part: Husband failed to preserve any issue with respect to the tax debt. Husband does not identify any point in the record where he alerted the trial court that the debt should not be attributed to his business and should, instead, be included in an equal division of marital assets. *See* ORAP 5.45(4)(a)(1) ("Each assignment of error, as appropriate, must specify the stage in the proceedings when the question or issue presented by the assignment of error was raised in the lower court * * *."). In the preservation section of his brief, husband asserts that he "did not agree with wife's balancing computations, which omitted the HELOC loan and the IRS debt," but he does not identify where in the record he asserted that disagreement, much less where (or even if) he argued to the trial court that he disagreed with wife's computations *because* they omitted the tax debt. Our own review of the record has not revealed anything resembling preservation of the asserted error. To the extent that husband might contend that he was unaware that the trial court would treat the tax debt in the manner that it did and therefore had no opportunity to object, the court's letter opinion made clear how it would treat the debt in the

a manner that is just and proper in the circumstances and, accordingly, are not required to adhere to either party's suggestions about how that should be done. *Cf. Crowley and Crowley*, 134 Or App 177, 181, 894 P2d 1174 (1995) (courts "are not required to accept property settlement agreements submitted by the parties" in dissolution actions, although a court ordinarily will respect "a considered agreement" absent unfairness). We reject husband's argument without further discussion.

judgment. Husband could have objected thereafter but did not. Accordingly, we conclude that the issue is unpreserved, and we do not consider it. *See McDougal v. Griffith,* 156 Or App 83, 86-87, 964 P2d 1135 (1998), *rev den,* 328 Or 330 (1999) (holding that a party's failure to alert the trial court, before entry of judgment, to a purported error in a letter opinion precludes appellate review of that error).

We reach a different conclusion with respect to husband's arguments about the HELOC. At trial, husband claimed that the HELOC, like the first mortgage on the Sleepy Hollow property, was a lien on that property and that it "couldn't be sold if we had to without satisfying those first," thereby asserting that the HELOC diminished the equity in the property. He also told the court that he had "no problem giving [wife] the Harbeck property and the debt that goes with it," again referring to the HELOC, which he claimed encumbered both properties. In context, those statements sufficiently notified the trial court of husband's position that the HELOC should be considered in balancing the property awards. It follows that the issue is preserved for appeal.

We turn to the merits of husband's contention that the trial court erred by not dividing the HELOC debt between the parties. ORS 107.105(1)(f) provides the court in a dissolution proceeding with authority to divide the parties' property, and it directs the court to do so in a manner that is "just and proper in all the circumstances." The statute distinguishes between property brought into the marriage and property acquired during the marriage. *Kunze,* 337 Or at 133. Property in the latter category—termed "marital assets"—is subject to a rebuttable presumption of equal contribution under ORS 107.105(1)(f)(C). If one spouse rebuts the presumption of equal contribution, "absent other considerations, it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption." *Id.* at 135. If the presumption has not been rebutted, the property ordinarily will be divided equally between the parties, again "absent other considerations." *Id.* at 134. Property acquired before the marriage is not subject to the presumption of equal contribution. The party who acquired premarital property generally is entitled to receive the property in the marital-property division, unless

other considerations make it just and proper to distribute it differently. *Loomis and Loomis*, 247 Or App 127, 136, 268 P3d 700 (2011).

As the previous paragraph indicates, other considerations may bear on what is just and proper with respect to division of both marital assets and other marital property. The timing of, and relative contributions to, the acquisition of property are two significant considerations in the "just and proper" determination, but they are not the only relevant factors. Rather, courts also must consider equitable factors, including "the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and * * * the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling." *Kunze*, 337 Or at 136; *see id.* at 135 ("[T]he court's final inquiry as to the 'just and proper' division concerns the equity of the property division in view of *all* the circumstances of the parties." (Emphasis added.)).

As part of determining a just and proper division of the parties' property, "a court may divide the debts that the parties incurred during their marriage." *Shlitter and Shlitter*, 188 Or App 277, 283, 71 P3d 154 (2003) (citation omitted). Our cases recognize a distinction between marital debts and debts that benefitted only one of the parties. In determining the nature of a debt, courts "focus not on the person in whose name the [debt was incurred], but on the use to which it was put." *Branscomb and Branscomb*, 201 Or App 188, 202, 117 P3d 1051, *rev den*, 339 Or 544 (2005). If the debt was incurred to pay family expenses, equal division of the debt is generally appropriate. If, on the other hand, the debt is properly attributed to only one of the parties, the debt should generally remain that party's responsibility. *Id.* at 203. "[A]s a general rule, when a court awards a business entirely to one party, the debts associated with that business should go with it." *Ashlock and Ashlock*, 186 Or App 212, 218, 62 P3d 874 (2003).

Ultimately, the determination of what is just and proper in all the circumstances is a matter of discretion for the trial court, and we will disturb the court's decision only

if it misapplied the statutory and equitable considerations required by ORS 107.105(1)(f). *Kunze*, 337 Or at 136.

In this case, the trial court did not expressly make a finding on the use to which the HELOC proceeds were put. We exercise our discretion to determine that fact *de novo*, *see* ORS 19.415(3)(b), and find, in accordance with wife's testimony, that the proceeds were used in part to support husband's business and in part to finance improvements to the Sleepy Hollow property. However, no documentary evidence establishes how the HELOC proceeds were divided between those uses, and wife's testimony on that point is not detailed. Consequently, we cannot determine what portion of the debt is attributable to husband's business and what portion, instead, properly could be associated with Sleepy Hollow (which would reduce that property's value for purposes of the equalizing judgment).

Under those circumstances, our inability to apportion the debt is attributable, at least in part, to the way in which husband handled the parties' finances. Given his assumption of that responsibility, he was in a better position than wife to provide evidence concerning the uses to which the HELOC proceeds were put. On that point, however, husband provided no documentary evidence. Instead, he simply testified that he had never used the HELOC funds for business purposes—and the trial court implicitly found that testimony not to be credible. We defer to that implicit lack-of-credibility finding, which is consistent with the trial court's explicit finding that wife was more credible than husband regarding other matters. Given the dearth of evidence concerning the HELOC and our finding that it is at least partly a business debt, we see no way to improve on what we infer to be an implicit decision by the trial court to attribute the entire debt to husband's business. At the very least, we cannot say that the court abused its discretion when it included the HELOC in the conglomeration of business assets and debts that it assigned to husband at zero net value. Accordingly, we reject husband's first assignment of error.

In his second assignment of error, husband challenges the trial court's award of attorney fees to wife. In its June 2010 letter opinion, the trial court stated that it

was "equitable to require Husband to pay one-half of Wife's reasonable attorney fees * * *." On July 9, 2010, wife served husband, by mail, with copies of her attorney-fee statement and the proposed judgment, which stated the total fee award requested (one-half of the fees incurred). Wife filed the fee statement and proposed judgment with the court on July 20, 2010. The trial judge signed the judgment two days later, and it was entered in the register on July 23, 2010.

Husband argues that the court did not give him adequate time to respond to wife's fee request. He contends that, under ORCP 68 and ORCP 10 C, the court was required to allow him 17 days to respond to wife's fee request, which it did not do. Wife responds first that husband failed to preserve the issue for appeal because he did not object to the award of attorney fees, file a motion to reconsider, or attempt to contact the court regarding the fee award. On the merits, wife does not assert that the court gave husband sufficient time to respond to her fee petition. Instead, she simply contends that the court's discretionary fee award was appropriate, taking into account the considerations listed in ORS 20.075.

The same analysis informs our conclusions on both preservation and the timing of the fee award. ORCP 68 C(4)(b) sets out the requirements for objecting to an attorney-fee request, providing, in pertinent part, "A party may object to a statement seeking attorney fees or costs and disbursements or any part thereof by written objections to the statement. The objections shall be served within 14 days after service on the objecting party of a copy of the statement." ORCP 10 C provides that,

"[e]xcept for service of summons, whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon such party and the notice or paper is served by mail, 3 days shall be added to the prescribed period."

Because wife served husband with her attorney-fee statement by mail on July 9, 2010, he had 17 days from the date of service—until July 26, 2010—to file objections. The

trial court entered the judgment awarding attorney fees three days before that deadline passed.

Husband had every reason to expect that he still had time to object to wife's attorney-fee request, so his failure to object before the court entered the judgment does not raise a preservation barrier to challenging the award on appeal. *Cf. State v. Johnson*, 242 Or App 279, 284, 255 P3d 547, *rev den*, 350 Or 530 (2011) (preservation was not required where there was no reason for the defendant to expect that the judgment would be amended without him having had an opportunity to raise objections at a hearing). Wife cites no authority in support of the assertion that husband was required to move for reconsideration or otherwise bring the issue to the trial court's attention after it entered the judgment, and we are aware of none. In short, preservation principles do not prevent husband from challenging the attorney-fee award in the judgment.

Regarding timing of the attorney-fee award, we again note that the trial court entered the judgment three days before the deadline for filing objections had passed. We agree with husband that the court erred in doing so. *See McIntyre v. Feeman*, 218 Or App 321, 324, 179 P3d 723 (2008) (a party has 17 days to file and serve objections to an attorney-fee request when that request was served on the party by mail). On remand, husband is entitled to file objections under ORCP 68 C(4)(b), and, if he does so, the court "shall hear and determine all issues of law and fact raised by the statement of attorney fees *** and by he objections," pursuant to ORCP 68 C(4)(c)(i).

Attorney-fee award vacated and remanded; otherwise affirmed.