Argued and submitted April 8, 2013, affirmed February 25, 2015

In the Matter of the Marriage of

Linda Sue HOSTETLER,
nka Linda Sue Miller,
*Petitioner-Respondent,*
*and*

Ronald Jay HOSTETLER,
*Respondent-Appellant.*

Marion County Circuit Court
10C30754; A149924

344 P3d 126

Richard F. Alway argued the cause and filed the briefs for appellant.

Russell Lipetzky filed the brief for respondent.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Schuman, Senior Judge.*

DUNCAN, P. J.

_____

* Haselton, C. J., *vice* Wollheim, S. J.

## DUNCAN, P. J.

Husband appeals from a dissolution judgment, assigning error to the trial court's property division and its denial of his request for attorney fees. With respect to the property division, husband argues that the trial court erred by failing to give him one half of the marital asset portion of wife's retirement accounts and by assigning all of the marital debt to him. We conclude that, contrary to husband's arguments, the trial court engaged in the process contemplated by ORS 107.105(1)(f) (2008) and properly exercised its discretion in determining a just and proper division of the parties' assets and liabilities.[1] With respect to the attorney fees, husband argues that the trial court erred by failing to explain its denial of his request for attorney fees. We conclude that, because husband did not request, as required by ORCP 68 (C)(4)(g), that the trial court state its findings of fact and conclusions of law on the record, the court did not err in failing to do so. Accordingly, we affirm.

The relevant facts are undisputed.[2] After dating intermittently for 17 years, the parties began living together in March 2006, and they married in July 2007. They separated in January 2010, and wife filed for dissolution in March 2010. At the time of the dissolution trial, the parties had been married approximately four years. Wife was 54 years old, and husband was 61. The parties have one adopted child, a son, who was age nine at the time of trial. After trial, the trial court entered a general judgment of dissolution on September 30, 2011.

At the time of their marriage, husband was retired and receiving a monthly pension benefit from the Oregon

---

[1] The statute has been amended several times since the trial court entered the dissolution judgment in this case. All references in this opinion are to the version of the statute in effect at the time of the judgment.

[2] Although we have discretion to review domestic relations cases *de novo*, neither party has asked us to and we decline to do so. *See* ORS 19.415(3)(b) (describing discretionary *de novo* review); *see also* ORAP 5.40(8)(c) (providing that we exercise *de novo* review "only in exceptional cases"). Therefore, we are bound by the trial court's findings, provided that they are supported by evidence in the record. *Kaptur and Kaptur*, 256 Or App 591, 596 n 2, 302 P3d 819 (2013) (in a domestic relations case, if we do not exercise our discretion to review *de novo*, we review the trial court's factual findings to determine whether they are supported by any evidence).

Public Employee Retirement System (PERS). At the time of the dissolution trial, husband's monthly income was $6,598; he received $5,100 in PERS benefits and $1,498 in Social Security benefits based on his employment history. He also received $962 in Social Security benefits for the parties' minor son, of whom he had custody. During the marriage, husband stayed home to care for the parties' son, and wife worked as a mental-health therapist. At the time of the dissolution trial, wife's monthly income from employment was $4,301. Wife was also a member of PERS and owned three retirement accounts related to her public employment: a PERS Tier Two account, a PERS Individual Account Program (IAP), and an Oregon Savings Growth Plan (OSGP) account.

The parties' dissolution trial was conducted over two days. On the first day, the parties and the court resolved most of the disputed issues relating to the dissolution, including child custody, a division of their tangible personal property, and the value of the family home. On the second day, the parties resolved disputed issues relating to child support. The remaining issues concerned the division of the parties' remaining assets (including the family home and wife's PERS accounts) and the division of marital debt. Husband offered into evidence a proposed distribution of assets and liabilities.

Husband requested an equal division of the marital asset portion of wife's PERS accounts. According to husband, the account balances at the time of trial were as follows: $29,386 in the Tier Two account, $27,297 in the IAP account, and $11,818 in the OSGP account, for a total of $68,501. After deducting the premarital value of the accounts and estimated future taxes, husband calculated a net marital increase in value of $23,153. Wife did not dispute those figures. Husband requested an award of half of the accounts' net marital increase: $11,576.

Husband offered evidence that the debt accumulated by the parties during the marriage—and prior to their separation—totaled $8,469. That debt, according to husband, derived from a credit card, a credit line, and a medical bill for the parties' son. Wife did not dispute either the amount

or nature of the marital debt. Husband indicated that he was currently paying the debt and would continue to do so, but requested that half of the value of the debt be "attributable to [wife]"; that is, that wife's portion of the marital debt be "added in some manner" to any award to husband.

The trial court explained that it was not going to rely on husband's proposed division or attempt to make a mathematically equal division of the marital assets and liabilities. Rather, because of a number of considerations (including the long-term nature of the parties' relationship, husband's monthly retirement income, the award to husband of the marital residence—including its anticipated appreciation in value—free of any interest by wife, and husband's receipt of the child's Social Security benefits), the court said that an equal division of marital assets and liabilities had been "rebutted," and that it would attempt to make an equitable division of the assets and liabilities that permitted each of the parties to maintain a lifestyle similar to that which they had before the dissolution. Therefore, the court rejected husband's suggestion that the court equalize the property and debt division through a division of wife's retirement accounts, which the court considered to be small compared to husband's.

Although husband's PERS account had been earned prior to the marriage and the court believed that it could not divide that asset or its income stream, the court nonetheless concluded that it was appropriate to consider husband's retirement income in determining an equitable distribution of the parties' assets. The court explained, "I'm not going to give any of [husband's retirement income] to [wife]. What I am going to do is consider it when I try to do some equitable distribution * * *." The court thus awarded 90 percent of the overall balance of wife's retirement accounts to wife and 10 percent to husband. The court did not distinguish between the premarital and marital portions of the accounts.[3]

---

[3] Rather than dividing only the marital-asset portion of wife's retirement accounts, which husband estimated to be $23,153, the trial court divided the full value of the accounts—$68,500—without accounting for tax consequences. Husband asserts that the court's award of 10 percent of the value of the accounts to husband is nonetheless "short of his entitlement of $11,576 by some $6,370, after applying a 24% taxation of the court's award."

In addition to seeking one half of the marital portion of wife's retirement accounts, husband sought to be credited for his payment of the marital debt through some form of "equalization." The trial court rejected any form of equalizing judgment, explaining that it did not want either party to owe money to the other. The judgment allocated the entirety of the parties' marital debt to husband.

Finally, the trial court denied both parties' requests for attorney fees without explanation. At trial, the court simply stated, "I'm not going to award attorney's fees to either one, you can be responsible for your own fees." Likewise, in the dissolution judgment, the court ordered that "[b]oth parties [be] responsible for their own attorney fees and costs."

On appeal, husband raises three assignments of error. The first two assignments pertain to the trial court's division of the parties' marital property; specifically, the first assignment challenges the division of wife's retirement accounts, and the second assignment challenges the allocation of all of the marital debt to husband. With respect to the first assignment, husband cites *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004), and contends that the court erred when it (1) failed to engage in an analysis with respect to the presumption of equal contribution to the marital increase in the accounts and whether it had been rebutted, and (2) failed to order an equal division of the marital increase in the accounts in the absence of countervailing equitable considerations. With respect to the second assignment, husband argues that he was entitled to be credited in some way for half of the parties' marital debt, which he "was paying and intended to pay."

In response to both assignments, wife contends that, in order to make an award that was just and proper, the trial court was not required first to engage in a mechanical application of the presumption of equal contribution as to each asset, followed by a consideration whether the presumption had been rebutted. This is especially so, wife contends, in light of the fact that wife never attempted to rebut the presumption of equal contribution. She further argues the trial court's division of the parties' assets and debts,

although not mathematically equal, was just and proper under the circumstances.

Husband's third assignment is that the trial court erred when it denied his request for attorney fees without explanation. Specifically, he argues that this case is "squarely within the purview" of *Baker and Baker*, 173 Or App 33, 35, 20 P3d 263 (2001), in which we held that a trial court must "identify the relevant facts and legal criteria" in ruling on a request for attorney fees. Thus, husband contends that the trial court erred when it offered "no explanation [for] its denial" of his request. Wife responds that husband failed to preserve his appellate argument because he did not submit an ORCP 68 statement asking the court to state its findings and conclusions on the record and he did not object to the court's failure to do so. Accordingly, wife contends that husband's third assignment of error should not be reviewed by this court.

We first address husband's challenges to the division of the parties' assets and debts. We begin with husband's contention that the trial court erred when it awarded 90 percent of wife's retirement accounts to wife. ORS 107.105(1)(f) governs property divisions. It directs courts to make "just and proper" property divisions, and it establishes a rebuttable presumption that spouses have contributed equally to property acquired during a marriage. It provides:

"(1)   Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"(f)   For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

As noted, husband contends that the trial court's uneven division of wife's retirement accounts was not "just and proper," because (1) the court failed to determine whether wife had rebutted the presumption that he had contributed equally to the marital increase in her retirement accounts,

and (2) no equitable considerations were present that would have militated against an equal division.[4]

We reject husband's argument to the extent that he reads *Kunze* to require a rebuttal analysis—regardless of whether a party has challenged the presumption of equal contribution—prior to ordering an unequal division of a marital asset. We also reject husband's argument to the extent that he contends that an unequal division of a marital asset will be permitted only when one or more of the particular considerations enumerated in *Kunze* are present. As explained in the following discussion, neither rebuttal of the statutory presumption nor the presence of any particular equitable consideration is a mandatory prerequisite to an unequal property division.

There are two categories of property subject to division in a dissolution action. *Loomis and Loomis*, 247 Or App 127, 136, 268 P3d 700 (2011). The first category of property, known as "marital property," consists of "any property that the parties possess at the time of the dissolution, regardless of when the property was first acquired." *Id.* The second class of property is a "subset of marital property"; it consists of property acquired during the marriage and is known as "marital assets." *Id.*

In *Kunze*, the Supreme Court outlined a series of inquiries that courts are to engage in when dividing property pursuant to ORS 107.105(1)(f). The first step is to determine when the parties acquired the property at issue. *Kunze*, 337 Or at 133-34. When an asset was acquired prior to the

---

[4] Husband objected to the trial court's proposed 90/10 division of the marital-asset portion of wife's retirement account, "taking exception *** because the presumption is of equal contribution during the marriage." The trial judge responded, "I do presume there's equal contribution. It's been rebutted in my mind *** because [of] some of the choices that [the parties] made as they went along ***." When asked to elaborate on the particular factors that amounted to a rebuttal, the court cited the parties' respective incomes, their joint decision that husband would act as the primary caregiver to son, and the length of their relationship.

On appeal, husband argues that the trial court's rebuttal analysis was improper because it "had little to do with the *acquisition* of the retirement accounts *** as opposed to its future impact." (Emphasis added.) It is clear, however, that the court did not dispute husband's equal contribution to the acquisition of the assets. Rather, the court's reference to "rebuttal" related to the equal division of the assets.

marriage of the parties, the court's inquiry is limited to "what is 'just and proper in all the circumstances' in distributing that property." *Id.* at 134 (quoting ORS 107.105(1)(f)). If, however, a party establishes that an item of property was acquired during the marriage—rendering it a "marital asset"—then the court applies the statutory presumption of equal contribution. *Id.* "The presumption directs the court that, unless proven otherwise, the court must find that both parties have contributed equally to the acquisition of marital assets." *Id.* When the presumption is not rebutted, the "just and proper" division of marital assets, absent other considerations, is an equal division between the parties. *Id.*[5]

A spouse seeking to rebut the presumption of equal contribution "has the burden of proving by a preponderance of the evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset." *Kunze*, 337 Or at 134. If the presumption of equal contribution is rebutted, then "the party holding the separate asset is entitled to receive the property in the division of marital assets *unless other considerations make it 'just and proper in all the circumstances' to distribute the property otherwise.*" *Loomis*, 247 Or App at 136 (citations omitted; emphasis added).[6]

Thus, application of the statutory presumption of equal contribution is not the final step of the analysis; a trial

---

[5] Retirement accounts, even those in payout status, are treated as "property" for purposes of property division in dissolution actions. *Rushby and Rushby*, 247 Or App 528, 533-34, 270 P3d 327 (2011), *rev den*, 352 Or 33 (2012); *Colling and Colling*, 139 Or App 16, 22, 910 P2d 1165, *rev den*, 324 Or 78 (1996) ("[W]e hold that in circumstances where it is necessary to achieve an equitable result, it is permissible for the court to attribute value to a retirement account, even though the person has retired."). The portion of a pension or a retirement account that accrued during the marriage is known as the "'marital asset' portion of [the] pension." *Rushby*, 247 Or App at 533 (quoting *Stokes and Stokes*, 234 Or App 566, 573, 228 P3d 701 (2010)). The marital-asset portion of the pension is subject to the rebuttable presumption of equal contribution; thus, a spouse is generally "entitled to one-half of that portion of a pension that was accumulated during the marriage." *Stokes*, 234 Or App at 573.

[6] Some assets, such as personal injury settlements, are subject to specific criteria in the trial court's determination whether the presumption of equal contribution has been overcome. *See, e.g. Davis and Davis*, 268 Or App 679, 342 P3d 1117 (2015) (describing special consideration applicable to court's determination whether presumption of equal contribution to personal injury settlement has been overcome).

court applies the presumption to "formulate[] a *preliminary* division of marital assets." *English and English*, 223 Or App 196, 203, 194 P3d 887 (2008) (emphasis added). After applying the presumption, the court "reviews the equity of the property division in view of all of the circumstances of the parties, *regardless of whether the statutory presumption of equal contribution has been rebutted*." *Id.* (emphasis added). The question at that final step is "what division of all the marital property—that is, *both the marital assets and any other property that the parties had brought into the marriage*—is 'just and proper in all the circumstances.'" *Kunze*, 337 Or at 135 (emphasis added).

As the Supreme Court has explained, although the just-and-proper inquiry "necessarily includes consideration of * * * the court's determination under the presumption of equal contribution, that inquiry also takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable." *Id.* (emphasis added); *see also Fay and Fay*, 251 Or App 430, 438, 283 P3d 945 (2012) (although whether property was acquired during the marriage and the parties' relative contributions to its acquisition are "two significant considerations in the 'just and proper' determination, * * * they are not the only relevant factors"; "other considerations may bear on what is just and proper[.]").

The other "equitable factors" for consideration may include, but are not limited to, "the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and * * * the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling." *Kunze*, 337 Or at 136. Those factors may, under appropriate circumstances, weigh in favor of an unequal division of property, even where the presumption of equal contribution has not been rebutted. In *Fuernsteiner-Perin and Perin*, 211 Or App 23, 153 P3d 151, *rev den*, 343 Or 33 (2007), for example, we concluded that it was just and proper to award certain real property to the wife even though the statutory presumption had not been rebutted. We reasoned that

"that asset would probably not currently exist but for her efforts. Without the * * * property, she will have no place to live, and awarding it to her will assist her in acquiring economic self-sufficiency by allowing her to remain in Hawaii and to continue her career as an artist, her only current source of income."

*Fuernsteiner-Perin*, 211 Or App at 32; *see also Van Horn and Van Horn*, 185 Or App 88, 93, 57 P3d 921 (2002), *rev den*, 335 Or 267 (2003) (equitable considerations may also tip the balance in the other direction; that is, they "may support an equal division of property even though the presumption of equal contribution has been overcome").

The overall statutory directive of ORS 107.105 is to "fashion a 'just and proper' division" of *all* marital property. *Kunze*, 337 Or at 133. The presumption of equal contribution is a preliminary step—applied to a single item of property—that results in a preliminary division of that particular asset.[7] *English*, 223 Or App at 203. When the presumption of equal contribution is not rebutted (either because no one has attempted to rebut it or an attempt has been unsuccessful), it weighs in favor of, but does not compel, an equal division of the asset.[8] Therefore, we reject husband's contention that, when the presumption is not rebutted, a court is precluded from making an unequal division of the marital asset in order to attain an overall division of marital property that is "just and proper in all the circumstances." ORS 107.105(1)(f).

Whether a trial court's property division is "just and proper" is reviewed for abuse of discretion. *Gay and Gay*, 250 Or App 31, 36, 279 P3d 265 (2012). Thus, "we will not disturb the trial court's ruling if, given the facts found

---

[7] Husband argues that he knows of "no case where this court, under any circumstances, has ever approved a 90/10 split of marital assets." We think that husband mischaracterizes the issue. The question is not whether a 90/10 split of a marital asset—here, the marital-asset portion of wife's retirement accounts—is just and proper. The question, rather, is whether the trial court abused its discretion under ORS 107.105(1)(f) with respect to its overall division of the marital property—including the parties' separate property.

[8] In terms of practical effect, we see no basis for distinguishing between the unsuccessful and the unattempted rebuttal. Where, as here, neither party seeks to rebut the presumption of equal contribution, the practical effect is the same as if wife had sought to rebut the presumption and failed in that attempt.

by the court, it chose one among a variety of legally correct outcomes." *Id.* A just and proper division of the parties' property requires consideration of all relevant equitable factors; courts are not limited to the four factors enumerated in *Kunze.* As the Supreme Court noted in *Kunze,* although the just-and-proper analysis

> "necessarily includes consideration of the statutory factors, including the court's determination under the presumption of equal contribution, that inquiry also takes into account the social and financial objectives of the dissolution, as well as any other considerations that bear upon the question of what division of the marital property is equitable. Although they will vary according to the individual circumstances of the parties, this court has identified some of the equitable considerations under ORS 107.105(1)(f) to include the preservation of assets; the achievement of economic self-sufficiency for both spouses; the particular needs of the parties and their children; and, as discussed in more detail below, the extent to which a party has integrated a separately acquired asset into the common financial affairs of the marital partnership through commingling."

337 Or at 135-36 (citations omitted; emphasis added). Thus, *Kunze* does not contain an exhaustive list of the equitable factors for consideration, and we reject husband's argument to the extent that it suggests otherwise.

Applying the *Kunze* analytical template here, we agree with husband that wife did not rebut the presumption that he equally contributed to the marital portion of her retirement accounts; she did not attempt to rebut it. But, for the reasons explained above, the fact that wife did not rebut the presumption as to that asset did not preclude the trial court from dividing that asset unequally if that is what the trial court determined was necessary in order to make a just and proper division of the marital property. And that is exactly what the trial court did. We note that while husband is correct that his PERS account was not a marital asset—and was therefore not subject to the presumption of equal contribution—it was nonetheless "marital property" subject to the dispositional power of the trial court. *Hanscam and Hanscam,* 247 Or App 207, 216, 268 P3d 715 (2011) ("[Assets

acquired before marriage] are nonetheless considered marital property; as such, they are also subject to a division that is 'just and proper in all the circumstances.'"); *see also Loomis*, 247 Or App at 136 ("[I]f the property is not a marital asset because it was separately acquired, then the party holding the separate asset is entitled to receive the property *** unless other considerations make it 'just and proper in all the circumstances' to distribute the property otherwise." (citations omitted)). Accordingly, husband's separate PERS account was an appropriate equitable consideration for the trial court in making a just and proper distribution of the marital property. *See Edwards and Edwards*, 209 Or App 555, 557-58, 149 P3d 196 (2006) (assets acquired before the marriage are subject to the court's "just and proper" division of marital property). Here, the court determined that it would not disturb husband's income stream from his PERS account, but it took that asset into consideration in determining that husband would be awarded only 10 percent of wife's PERS accounts. We conclude that the trial court did not abuse its discretion in so concluding.

With respect to the division of marital debts, husband contends that the trial court erred in failing to offer an explanation for why it chose to allocate all of the marital debt to husband, when wife offered no evidence to show that the debts were not reasonably incurred for family expenses. Pursuant to the trial court's authority to "determin[e] a just and proper division of the parties' property, '[it] may divide the debts that the parties incurred during their marriage.'" *Christensen and Christensen*, 253 Or App 634, 639, 292 P3d 568 (2012) (quoting *Shlitter and Shlitter*, 188 Or App 277, 283, 71 P3d 154 (2003)). Although the presumption of equal contribution applies to assets, not debts, we have held that where a debt was incurred to pay family expenses, "equal division of the debt is generally appropriate." *Fay*, 251 Or App at 438. Again, however, with marital debts as with marital property, "the determination of what is just and proper in all the circumstances is a matter of discretion for the trial court." *Id.*

Here, the trial court determined that, because of the disparity in the parties' resources (including husband's much larger PERS pension and the fact that husband

had been awarded the family home free of any interest by wife), it was just and proper to assign all of the marital debt to husband. Again, as previously noted, the trial court explained that it did not intend to make a division based on an itemized list of all of the parties' assets and liabilities; rather, it intended to make a property division that would disentangle the parties, that was equitable, and that allowed them to have a standard of living that approached the marital standard of living. Based on those considerations, the trial court concluded that an unequal division of the marital debts was "just and proper in all the circumstances." ORS 107.105(1)(f). We cannot conclude on this record that the trial court abused its discretion in making that division.

Finally, we consider husband's contention that the trial court erred when it refused to award him attorney fees. Wife responds that any error has not been preserved because, after the court's denial of attorney fees for both parties, husband "did not thereafter raise or revisit the issue, nor did he submit an ORCP 68 statement." We agree with wife and reject husband's third assignment of error.

On appeal, husband challenges the denial of attorney fees on the sole ground that the trial court offered no explanation for its ruling. As mentioned, at trial, the court simply stated, "I'm not going to award attorney's fees to either one, you can be responsible for your own fees." In the dissolution judgment, the court ordered that "[b]oth parties [be] responsible for their own attorney fees and costs."[9] No findings were included in the judgment. Husband argues that, under *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 95, 957 P2d 1200, *modified on recons*, 327 Or 185, 957 P2d

---

[9] In this case, both husband and wife sought attorney fees. Husband reiterated his request for fees in his trial statement, emphasizing wife's perceived lack of cooperation with the discovery process. He stated:

"Husband requests that the court award him reasonable attorney fees. In lieu of an award, the court may make a different division of assets and liabilities, favoring Husband. Through her lack of cooperation and noncompliance with discovery and other issues during the pendency of the case, Husband's expenses were unnecessarily increased."

Wife did not elaborate on her request.

1200 (1998),[10] and *Baker and Baker*, 173 Or App 33, 35, 20 P3d 263 (2001), the trial court abused its discretion when it failed to identify the "relevant facts and legal criteria" underlying its denial of fees.

Husband is correct that, under *McCarthy*, "where a party challenges *the substance* of an attorney fee award, findings may be necessary for meaningful appellate review." *Reeves v. Reeves*, 203 Or App 80, 91 n 4, 125 P3d 755 (2005), *rev den*, 340 Or 308 (2006) (emphasis added); *see also Baker*, 173 Or App at 35-36 (extending the *McCarthy* rule to discretionary attorney-fee awards under ORS 107.135). Here, however, husband makes no substantive challenge to the denial of fees; rather, he argues that we should remand based solely on the absence of findings to support the ruling. As the court noted in *McCarthy*, however, "[s]tanding alone, the absence of explanatory findings to support an award or denial of attorney fees is not a ground for reversal." *McCarthy*, 327 Or at 189.

On the contrary, "[a] trial court is required to make findings on its attorney fee award *only when* a party makes a written request for findings in accordance with ORCP 68 C(4)(e)."[11] *Reeves*, 203 Or App at 91 (emphasis added). In

---

[10] In *McCarthy*, the Supreme Court held that

"Efficient and meaningful appellate review for abuse of discretion cannot occur *** [where] we can only speculate about the possible relevant facts and legal criteria relied on for the court's award of attorney fees. Adequate findings about those matters need not be complex or lengthy. Rather, they must describe the relevant facts and legal criteria for the court's decision to award or deny attorney fees in any terms that are sufficiently clear to permit meaningful appellate review."

*McCarthy*, 327 Or at 190. A trial court fulfills its obligation under *McCarthy* by "'including in its order a brief description or citation to the factor or factors on which it relies' or by clearly indicating the basis of its decision in the record." *Nieth and Nieth*, 199 Or App 330, 339, 111 P3d 746 (2005) (quoting *McCarthy*, 327 Or at 188).

[11] Now numbered ORCP 68 C(4)(g), that section provides:

"On the request of a party, the court shall make special findings of fact and state its conclusions of law on the record regarding the issues material to the award or denial of attorney fees. A party must make a request pursuant to this paragraph by including a request for findings and conclusions in the title of the statement of attorney fees or costs and disbursements, objection, or response filed pursuant to paragraph (a), (b), or (c) of this subsection. In the absence of a request under this paragraph, the court may make either general or special findings of fact and may state its conclusions of law regarding attorney fees."

*Reeves*, a breach-of-contract case, we rejected the defendant's challenge to an attorney-fee award based on lack of findings where he had "made only an oral request for findings at a hearing on objections to the court's attorney fee award," and "ma[de] no claim that he complied with ORCP 68 C(4)(e)." *Id.*

Here, like the defendant in *Reeves*, husband "does not make any argument about why the [ruling] was unreasonable; he argues only that we should reverse * * * because of the absence of findings." *Id.* Thus, husband's challenge falls outside the scope of *McCarthy* and *Baker*, and the absence of findings to support the court's denial of fees— standing alone—does not justify a reversal. Husband was obligated to make a written request for findings pursuant to ORCP 68 C(4)(g) in order to preserve this issue for our review. Because he made no such request, *Reeves* controls, and we reject husband's final assignment of error.

Affirmed.